FILED

March 4, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 3:19 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Kathy Hunt, | ) | **Docket No. 20158-06-0687** |
|     **Employee,** | ) | |
| **v.** | ) | **State File No. 49530-2015** |
| Cox Oil Co., | ) | |
|     **Employer,** | ) | **Judge Joshua Davis Baker** |
| And | ) | |
| Technology Ins./Amtrust | ) | |
|     **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Kathy Hunt, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Cox Oil Company must provide Ms. Hunt a panel of physicians, pay bills associated with unauthorized care, and provide temporary disability benefits. The central legal issue is whether Ms. Hunt can demonstrate a likelihood of success at a trial on the merits of these issues. For the reasons set forth below, the Court finds Ms. Hunt is likely to succeed at a hearing on the merits in proving entitlement to a panel of physicians. The Court finds Ms. Hunt unlikely, however, to succeed at a hearing on the merits in proving entitlement to past medical bills or temporary disability benefits based on the evidence presented at this time.[1]

## History of Claim

Ms. Hunt is a sixty-three-year-old resident of Humphreys County, Tennessee. She worked for Cox Oil in one of its "Little General" convenience stores, located in McEwen, Tennessee. Her duties at the store included making pizzas for customers to purchase. Some of the ingredients to make the pizzas were stored in a freezer located in a shed on the store property.

---

[1] A complete listing of exhibits and the technical record admitted at the Expedited Hearing is attached to this Order as an appendix.

In June 2015, Ms. Hunt went to the freezer to get some frozen pizza dough.[2] She testified the pizza dough had been placed on a high shelf in the freezer, which required her to reach above her head to retrieve the dough. According to Ms. Hunt, each box contained eighteen pizza dough packages and weighed approximately twenty-five pounds.

Ms. Hunt testified the box had frozen to the shelf making it difficult to remove. She eventually loosened the box and attempted to guide it down from the shelf using her left hand. The box, however, fell too fast and directly on Ms. Hunt's left hand and arm. In its descent, the force of the box pulled her left arm down with it. Ms. Hunt testified she felt immediate pain and likened the sensation to someone stabbing her in the shoulder with a knife.

Ms. Hunt testified she spoke to the store manager, Betty Langford, via telephone the day after the accident occurred. She told Ms. Langford "what exactly happened" and, according to Ms. Hunt, Ms. Langford told her the accident "should be workmen's comp." Ms. Langford was on vacation when Ms. Hunt spoke with her.

After several days passed, without hearing word about her accident, Ms. Hunt became concerned. On the advice of a co-employee, she contacted Jackie Richardson Cox Oil's central-office manager.[3] According to Ms. Hunt, Ms. Richardson stated she turned information concerning her accident over to Technology Insurance, Cox Oil's workers' compensation insurance carrier. Ms. Hunt testified she called Technology Insurance and left several messages for Deborah McGee, a claims representative. Ms. McGee did not return her calls. Ms. Hunt did, however, receive a letter from "Carlisle Medical" concerning a prescription drug program available for workers' compensation patients around the time she contacted Technology Insurance. (Ex. 5.)

On June 17, 2015, Ms. Hunt received treatment from Jennifer Gerber, a nurse practitioner at Waverly Family Medicine. (Ex. 1 at 3-4.) She paid for these services with her private insurance, BlueCross BlueShield (BCBS). (Ex. 3.) FNP Gerber recommended an MRI and told Ms. Hunt she could return to work light duty pending the results of the MRI. (Ex. 1 at 4.)

Ms. Hunt underwent an MRI on June 20, 2015. It revealed the following:

---

[2] In her affidavit, Ms. Hunt stated her injury occurred on June 8, 2015. At the hearing, she testified the accident occurred on June 5, 2015. The parties discussed the discrepancy during the hearing. The exact date of injury, however, is not determinative of any issue in this Expedited Hearing.

[3] Ms. Hunt first referred to Ms. Richardson as "Jackie Baker" when testifying.

1. Mild osteoarthritis in the LEFT acromioclavicular joint and glenohumeral joint.
2. Multiple small loose bodies in the recesses of the LEFT glenohumeral joint consistent with nephritis.
3. Mild tendinopathy of the supraspinatus and infraspinatus tendons with mild tendinopathy of the subscapularis tendon. No significant tear.
4. A SLAP tear of the biceps anchor proximal kink in the posterior superior labrum. Anterior inferior labrum appears torn.
5. Bicipital tenosynovitis.
6. Capsulitis.

(Ex. 1 at 40.)

Chad Turnbow, Cox Oil's area supervisor of its Little General convenience stores, testified he first learned Ms. Hunt suffered an injury while speaking with Ms. Langford around June 17, 2015. Ms. Langford needed approval to work overtime because Ms. Hunt requested time off from work to have shoulder surgery. Mr. Turnbow told Ms. Langford that Ms. Hunt could not return to work until released by her doctor. According to Mr. Turnbow, Cox Oil does not offer light duty work to its convenience store workers because the workers could suffer further injury by working before they are physically able. Mr. Turnbow testified he did not know Ms. Hunt's injury was work-related and so began preparing FMLA paperwork for Ms. Hunt to complete. Around June 24, 2015, Ms. Hunt met Mr. Turnbow at the Little General convenience store and showed him how the accident occurred. After speaking with Ms. Hunt, Mr. Turnbow reported the incident to the Cox Oil central office as a work-related injury. Mr. Turnbow did not know what happened with the claim after he reported it, but said Ms. Richardson would be responsible for providing Ms. Hunt a panel of physicians.

In late June 2015, FNP Gerber referred Ms. Hunt to Dr. Jason Haslam, an orthopedic surgeon. Dr. Haslam treated Ms. Hunt's shoulder with steroids and conservative methods. He also prescribed physical therapy. (Ex. 1 at 8-13.) Ms. Hunt paid for these services through BCBS until she received a notice from STAR Physical Therapy stating BCBS refused to pay for additional physical therapy sessions because her injury was work-related. (Ex. 6.)

Despite the denial of further physical therapy, Ms. Hunt continued to see Dr. Haslam. On October 23, 2015, Dr. Haslam wrote the following in his treatment notes:

Impression: Left shoulder pain from an injury which occurred at work on 6/12/2015. I believe her underlying current problem is degenerative joint disease which was aggravated by a strain of the shoulder associated with catching a box at work. I generally would consider treating her injury which occurred on June 12, 2015 for a total of 3 months under Workers'

Compensation given the strain to the shoulder. However after 3 months, I would treat under her commercial insurance given the underlying diagnosis of degenerative changes and loose body formation in the glenohumeral joint. The degenerative disease process is not a work-related injury. At the present time, it is my opinion that her current symptoms are attributable to her work-related injury by 30%. In other words, her current shoulder symptoms are not primarily related to her work related injury which occurred on June 12, 2015. This was reviewed with the patient in detail. I will see the patient back as needed. She may get a second opinion. In the meantime, we will provide a cortisone injection to hopefully decrease her overall pain.

(Ex. 1 at 16-17.)

On November 19, 2015, Ms. Hunt returned to Waverly Family Medicine and received treatment from Dr. Lawrence R. Jackson, Jr. Dr. Jackson opined Ms. Hunt's workplace injury caused the problems identified in the MRI. (Ex. 1 at 21-23) In response to a causation opinion letter he received from Mr. Hicks, Ms. Hunt's attorney, Dr. Jackson answered yes when asked whether he believed Ms. Hunt's condition was primarily caused by her workplace accident. (Ex. 1 at 19.)

Ms. Hunt filed a Petition for Benefit Determination seeking temporary disability and medical benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). (T.R. 2.) Ms. Hunt filed a Request for Expedited Hearing, and this Court heard the matter on February 17, 2016.

At the Expedited Hearing, Ms. Hunt argued Cox Oil must pay the medical bills for treatment she received from Drs. Jackson and Haslam, and FNP Gerber at Waverly Family Medicine. She also seeks to recover the cost of physical therapy.

Ms. Hunt denied having shoulder problems before coming to work for Cox Oil. At the time of the hearing, Ms. Hunt continued to experience pain in her shoulder and have difficulty lifting items weighing as little as five pounds without pain. She asked for a panel of physicians to treat her condition.

Additionally, Ms. Hunt testified she could not work because Cox Oil had no light duty available. She asked for temporary total disability benefits for the time she missed from work.

Cox Oil maintained Ms. Hunt is not entitled to any benefits because she cannot prove medical causation. In support of its position, Cox Oil relies on Dr. Haslam's causation opinion.

4

## Findings of Fact and Conclusions of Law

I.    The Court finds Dr. Haslam's causation opinion more persuasive than Dr. Jackson's.

Ms. Hunt seeks temporary disability and medical benefits. At this time, the central dispute over entitlement to these benefits concerns proof of a causal relationship between the injury and her need for medical treatment. Here, Dr. Jackson and Dr. Haslam provided differing medical opinions on the cause of Ms. Hunt's shoulder condition. Resolution of the causation dispute, therefore, turns in part on the Court's comparison of the medical opinions:

> When the medical testimony differs, the trial judge must obviously choose which view to believe. In doing so, he is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

*Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). For the reasons hereafter, the Court credits Dr. Haslam's opinion.

The Court finds Dr. Haslam more qualified than Dr. Jackson to provide an opinion on causation of Ms. Hunt's shoulder condition. Dr. Haslam is an orthopedic surgeon and, therefore, familiar with conditions affecting bones, joints and ligaments.[4] While neither side presented evidence of Dr. Jackson's specialty, his associate, FNP Gerber, referred Ms. Hunt to an outside provider for orthopedic care. Accordingly, while the facts do not directly address his specialty area, the Court infers Dr. Jackson is not an orthopedic specialist.

The Court finds the circumstances of Dr. Haslam's examination made his causation opinion more reliable. Dr. Haslam began treating Ms. Hunt on July 1, 2015, between three and four weeks after her accident. Dr. Haslam treated Ms. Hunt on several occasions in July and August providing pain relief shots and referring her for physical therapy. He provided a causation opinion after directing her treatment over this period. Dr. Jackson, on the other hand, did not begin treating Ms. Hunt until November 2015. The evidence shows he saw her only twice and provided an opinion on causation after the first visit. With respect to the information available to the physicians, the undersigned finds this factor does not add credibility to either Dr. Jackson's or Dr. Haslam's opinions

---

[4] Orthopedics - a branch of medicine concerned with the correction or prevention of deformities, disorders, or injuries of the skeleton and associated structures (as tendons and ligaments). http://www.merriam-webster.com/dictionary/orthopedics (last visited Mar. 4, 2016).

as both essentially had access to the same information.

Based on his area of specialty and greater involvement in treating Ms. Hunt's injury, the Court finds Dr. Haslam's opinion more persuasive than Dr. Jackson's. The meaning of Dr. Haslam's opinion, however, is difficult to decipher.

Dr. Haslam opined he would "generally consider" treating Ms. Hunt's injury under workers' compensation for three months due to the "strain to the shoulder," but also opined her "current shoulder symptoms are not primarily related to her work-related injury." Instead, Dr. Haslam attributes these symptoms to degeneration. In this Court's view, Dr. Haslam's opinion appears to be that Ms. Hunt's "shoulder strain" is work-related but her degenerative condition, which he opined is the cause of her current symptoms, is not. The opinion, however, could also mean that Dr. Haslam would have treated Ms. Hunt's injury as workers' compensation in the past, but would not do so under the present causation standard. The point is, the Court is unsure what Dr. Haslam meant. Due to the uncertainty of the opinion's meaning, the Court finds Ms. Hunt unlikely to prevail at a hearing on the merits in proving medical causation.[5]

II.    Cox Oil must provide Ms. Hunt a panel of orthopedic physicians.

The administrative rules governing procedures in the Bureau of Worker's Compensation provide, "[u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury." Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015). An employer who fails to comply with this rule without good cause could be assessed a civil penalty of up to $5,000. *Id*.

Here, Ms. Hunt proved she had an accident in the course and scope of her employment when she injured her shoulder while retrieving a box of frozen pizza dough from a freezer shelf in June 2015. She also proved she timely reported the injury to her employer, as she told Mr. Turnbow of the injury when he visited the Little General Store sometime around June 24, 2015. *See* Tenn. Code Ann. § 50-6-201(a)(1) (2015). According to Mr. Turnbow's testimony, he took appropriate steps to report the injury to Cox Oil's central office on June 24. Additionally, Mr. Turnbow knew Ms. Hunt sought medical care for her injuries. Ms. Hunt, therefore, has come forward with sufficient evidence from which this Court concludes she is likely to prevail at a hearing on the merits in proving she timely reported a workplace accident.

---

[5] For the same reason, the Court also finds Dr. Haslam's opinion insufficient to support a finding of noncompensability.

6

Although she treated privately and Dr. Haslam opined her *current need for treatment* did not arise primarily out of her workplace injury, the Court, as stated previously, is not satisfied that his opinion definitively addressed the issue of medical causation. Ms. Hunt, however, does not have to prove compensability by a preponderance of the evidence at an expedited hearing to receive a physician panel. *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she only needs to present sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits when requesting a panel. *Id.*

Considering the Court's finding concerning Dr. Haslam's causation opinion, Dr. Jackson's causation opinion, Ms. Hunt's timely reporting of her workplace accident, the severity of her injury, her continued need for treatment, and Dr. Haslam's permission of a second opinion, the Court finds Ms. Hunt will likely prevail at a hearing on the merits in proving entitlement to a panel of physicians. The Court, therefore, finds Cox Oil must provide Ms. Hunt a panel of physicians.

III. <u>Ms. Hunt cannot recover temporary disability benefits or medical bill reimbursement.</u>

In order to prevail in her request for temporary total disability benefits and payment of past medical bills in this Expedited Hearing, Ms. Hunt must convince this Court she is likely to prevail at a hearing on the merits of her entitlement to those benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2015). To prevail on either of these issues at a compensation hearing, Ms. Hunt must prove, by a preponderance of the evidence, that she suffered a compensable injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015); *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978) (An employee is entitled to receive temporary total disability benefits pursuant to Tennessee Code Annotated section 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work.); *see also, James v. Landair Transport, Inc.,* No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015).

At this time, the proof does not establish Ms. Hunt suffered a compensable injury due to the lack of a compelling, clear opinion on medical causation. While it is a close question of whether Dr. Haslam's opinion establishes causation for the shoulder strain injury, Dr. Haslam's additional statement that Ms. Hunt's current symptoms are only 30% caused by her workplace accident renders the opinion too speculative to support a compensability finding in this Court's opinion. Accordingly, without a clear causation opinion, the Court does not find Ms. Hunt likely to prevail at a hearing on the merits in proving compensability of her injuries and, therefore, cannot recover past medical bills or temporary disability benefits at this time.

7

**IT IS, THEREFORE, ORDERED** as follows:

1. Cox Oil shall provide Ms. Hunt a panel of orthopedic specialists for her right shoulder injury as required by Tennessee Code Annotated section 50-6-204 (2015) from which Ms. Hunt shall select a treating physician. Medical bills shall be furnished to Cox Oil or its workers' compensation carrier by Ms. Hunt or the medical providers.

2. Ms. Hunt's claim against Cox Oil and its workers' compensation carrier for the requested temporary disability benefits and medical bills is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on April 18, 2016, at 10:00 a.m. (CDT).

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED ON THIS THE 4ᵀᴴ DAY OF MARCH, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

    A Scheduling Hearing has been set with Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.

    Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without

8

**your further participation.  All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.**  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within

three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical records
2. Ms. Hunt's affidavit
3. Medical Bills
4. Notice of Claim postcard
5. Carlisle Medical letter
6. BCBS insurance payment denial letter
7. Hunt written statement
8. Wage Statement

Technical record:[6]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. July 22, 2015 Letter from Charles Hicks
5. November 4, 2015 Letter from Mike Jones
6. Pre-hearing Order

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 4th day of March, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Charles L. Hicks, Esq. | | | | | x | larry_hickslaw@bellsouth.net |
| Mike Jones, Esq. | | | | | x | mjones@wimberlylawsom.com |

_____

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov